---

### STREET IMPROVEMENTS.

[Circuit Court of Auglaize County.]

ELI BURKE ET AL v. THE VILLAGE OF WAPAKONETA, OHIO, ET AL.

Decided, April 23, 1904.

*Street—Improvement of, by Petition—In Counties not Containing a City of the First Class—Discretion and Duty of Council—A Drain or Sewer Properly Included in the Improvement, Though not Petitioned for—Method of Assessment—Benefits.*

1. In constructing a street improvement for which petition has been made, it is the duty of council and its members to avoid any abuse of discretion either in the character or cost, and to exercise good judgment in making the improvement permanent in so far as its character imports durability and permanence, and to require that it shall be done in a workmanlike manner and without extravagance.

2. Where it·is found necessary in order to complete the improvement to lay a 15-inch drain or sewer, there is authority in council so to do under the power granted by the Legislature to build the street,

notwithstanding the drain or sewer was not requested in the petition, and might have been constructed as a separate improvement.

3. It is. also within the power of council to appoint an engineer to take charge of the work, and where the one appointed has performed this work for many years for the village, and the fact of his appointment is a matter of common knowledge, the use of the words "office of the city engineer" in the advertisement for bids is not misleading, although the appointee has 'no separate office which is kept open at all times during business hours.

4. A failure to publish the ordinance providing for the improvement for the requisite time after it became effective is not such a vice in the proceedings as to affect the validity of the assessment, where there is nothing to indicate that any property owner was prejudiced thereby.

5. Where there is no claim that the expense charged against an improvement was not incurred, and no criticism as to the cost of the work or of the material, and no question as to the benefits resulting to the property, and all was done with the full knowledge and acquiescence of the property holders, the collection of the full amount of the assessment will not be enjoined on the ground that there was more included in the improvement than council was authorized to include under the petition.

NORRIS, J.; MOONEY, J., concurs; DAY, J., not sitting.

This case comes into this court on appeal and is submitted upon the second amended petition, the answer thereto and the evidence. The action is to enjoin the collection of amount for street improvement.

The plaintiffs, sixteen in number, each of them own lots abutting on East Auglaize street in this village. The method of assessment is by the foot front. They claim as reasons for enjoining the assessments that—

1. That the council has passed no resolution finding and decreeing the necessity of the improvement of the roadway.

2. The council passed no ordinance ordering and providing for the improvement of the roadway.

3. That as a part of said assessment is the cost of constructing a main sewer for a large sewer district; that the council passed no resolution declaring the necessity of the construction of the sewer, and passed no ordinance providing for and ordering the building of said sewer, and that the action and proceedings of the council concerning the necessity for the

improvement of said street, and the making of said sewer, and providing for and ordering the improvement of the roadway and the building of the sewer are illegal and void, for the reason that such resolution and such ordinance each contain two separate and distinct subjects, and provide for two separate and distinct improvements.  That such ordinance provided that the clerk of said village should advertise for bids for making said improvements; that the ordinancce was published for the first time on January 3, 1901; that on the same date, and before said ordinance was in force, the clerk caused the advertisement for bids to be published, and the same was published thereafter in four consecutive issues of two newspapers published in said village, thus publishing said advertisement only three times after such ordinance was in force, and that the bid of the contractor to whom said work was awarded was made in response to such advertisement.  It was stated in said advertisement that the specifications and plans for said improvement were on file in the office of the village engineer, when in fact there was no such office or officer of said village, and that the contract and the performance of it, for these reasons, in no wise effected to charge the costs of said work on the abutting property of the plaintiffs.

4.   The council passed no resolution finding and declaring the necessity of said sewer improvement, and passed no ordinance ordering and providing for the construction of it.

5.   The village of Wapakoneta is not situated in a county containing a city of the first class, and the assent, in writing, to' levy a special assessment upon property abutting on said improvement to pay the costs and expenses of the same was not given by a majority of the owners of abutting property, and, for want of such assent of such majority, the council never acquired jurisdiction to levy said special assessment upon plaintiff's said lots.

6.   The levy is without notice to plaintiffs; without opportunity given to plaintiffs to be heard in relation to the validity or amount thereof.

7.   The legislative enactment under which the council proceeded, namely, title 12, division 7, chapter 4, of the Re-

vised Statutes of this state, are unconstitutional, being particularly inimical to Section 19 of Article I of the Constitution of this state, and in violation of the Fourteenth Amendment to the Constitution of the United States, because said enactment invades and violates private property without due process of law.

Plaintiffs say that said assessments should be reduced, because:

1. Said street, when the improvement was commenced, had been graded to an established grade, and drained and gravelled, and the assessment here in controversy greatly exceeds the benefits, and by reason of this said assessment should be reduced at least thirty dollars as to each lot less than that as made.

2. The report of the board of appraisers referred to in Section 5 of the ordinance of the council is unfair in this: Lots 878, 879, 880 and 881, and lot 435 were appraised at less than their value, so that under the law limiting assessments to 25 per cent. of value, the effect as to these lots, as appraised, is to throw more than a fair proportion of the costs of the improvement upon the lots of plaintiffs.

3. That because of no resolution finding the necessity, and no ordinance providing for the building of said sewer, the council had no authority to assess any part of the expense incident to said sewer on plaintiff's said lots, and that said assessment should be reduced by an amount equal to the expense of said sewer construction so assessed.

4. The sewer empties into a tank sewer at Water street, and extends to Wood street, consisting of 1194 feet of 15-inch sewer-pipe; 70 feet of 10-inch sewer-pipe; 717 feet of 6-inch sewer-pipe; 46 feet 15-inch T-pipe; 12 feet 10-inch elbows, four man-holes and fifteen catch-basins, the total cost of which, including labor, amounts to $1,305. No opportunity was given plaintiffs to be heard concerning the plans and specifications of said sewer, and because of this as another reason, the council acquired no jurisdiction to assess the costs and expenses on the lots of plaintiff.

5. The sewer is larger and is laid deeper in the ground than necessary to drain the lots or the street and roadway, but is made to drain intersecting streets, and the assessment was arbitrary and without consideration of benefits, and for this reason the amount should be reduced as to each at least $25. Since the publication of said assessment ordinance, the council conducted from Wood street into said sewer a 12-inch sewer— another sewer 949 feet long; that this is in fact a continuation of said Auglaize street sewer, yet no part of the Auglaize street sewer was levied on the lots or lands abutting on Wood street, and for each of these reasons and for all of them plaintiffs seek to enjoin the collection of said assessment and every part of it, because the same is thus void.

The answer denies the averments of the petition which attack the legality of the assessments, and which are assigned as grounds for the injunction, and the issues thus tendered are upon the evidence submitted to this court on appeal.

The evidence presents these facts: On the 15th day of May, 1901, a petition was presented to the council of the village of Wapakoneta asking for the improvement of Auglaize street from the east rail of the C. H. & D. Railway track to the west line of Wood street by paving, setting curbing, grading, etc., said street, and requested that the cost of said improvement be assessed upon the abutting property. Their petition was duly referred to their committee on streets, with instructions to ascertain whether or not a majority of the property owners to be assessed were in favor of the improvement and desired the council to permanently improve the street. Their committee reported that such majority had signed the petition, and the council accepted and adopted the report.

On the 21st day of May, 1901, an ordinance was passed to establish a grade on East Auglaize street, and on the 29th day of May, 1901, the engineer having been directed in that behalf, presented to the council plans and specifications for paving and improving said street and the estimate of cost of said improvement and an outlet sewer at Water street. This report of the engineer and his plans and specifications were approved by the council.

On the 5th day of June, 1901, a resolution was passed by the council, two-thirds of the members concurring, declaring the necessity of the improvement, grading, draining, curbing, paving and otherwise improving said street in accordance with said specifications then on file in the office of the engineer, declaring that a majority of the property owners had signed the petition for said improvement, and declaring that a majority of the property owners to be charged with the cost of said improvement, having petitioned in that behalf, the cost of said improvement (less intersections, etc.) be assessed per foot front on the lots abutting the portion of said street to be improved, and directing the village clerk to publish the resolution, etc., and appoint Nicholas Schubert to serve legal notices of the passage of the resolution on the owners of property abounding and abutting the proposed improvement and make his return of such service to the council. Schubert made such service vouched by his return and affidavit on all the owners of property abounding and abutting the proposed improvement.

Thereupon on the 3d day of July the council passed an ordinance providing for the improvement in accordance with its aforesaid resolution, the cost to be assessed, fully going into detail in said ordinance concerning the improvement and its kind, referring to the specifications and plans therefor and the assessment of the costs and expenses of it, and providing for the issuing of bonds to anticipate the fund to be raised by the assessment.

By Section 3 of the ordinance the clerk is directed to advertise for bids. This ordinance to take effect after its passage and publication according to law. The ordinance was published July 4, 1901. The notice to contractors inviting bids was published July 4th, 11th, 18th and August 1, 1901. On the 16th day of August, 1901, the contract for the construction of the work was let. On the 16th day of April, 1902, the assessing ordinance was passed and published on the 24th, and duly went into effect after its publication. On the 16th day of April the resolution for the sale of bonds was passed, bids were solicited and the bonds were sold. The work having been finished, the money was paid out. All the steps leading to this final com-

pletion and payment thus appears from the evidence. And this action is to enjoin the collection of the assessment levied upon the abutting lots of the respective plaintiffs.

The evidence shows that the council did find and declare the necessity of the improvement, and did provide for the improvement by ordinance, and this upon a petition duly presented which bore the signature of a majority of those whose lots abutted upon the proposed improvement, and that these petitioners assented that the cost of the improvement be assessed on the abutting property.

In its proceedings on this petition, and in behalf of the improvement requested by it, all else being regular, it was the duty of the council and the members of that body to exercise good judgment and ordinary business sense, and to do the things necessary to accomplish the object requested by the petition. The improvement must be a permanent improvement in so far as its character imports durability and permanence, and it must be done in a workmanlike manner and without extravagance, and there must be no abuse of discretion either as to its character or its cost.

It was necessary in order to effectuate and complete this improvement to put in a 15-inch tile as was done here, even though it were not specifically requested in the petition, and not specifically declared necessary in the resolution and not specifically provided for in the ordinance, and if independent and without reference to the roadway, and if the surface of the street were not to be improved, this 15-inch drain or sewer would seem to be a separate improvement, and one which might be made at another time and by separate action of the council under other proceedings of the council relating to sewers; yet these facts would not limit the authority of the council to construct it as a part of this street improvement, if it accomplished the purpose without marked addition of expense for which it was considered to be necessary, namely, draining and making permanent the roadway. That the 15-inch tile serves other purposes as well, and was the means of extending other benefits to other property, and might be put to other uses by the residents along the street, while it at the same time performed the office of a

complete method of draining the roadway and making the whole improvement a good, substantial, workmanlike job, would not seem to require the council to take separate action by separate petition under other sections of the statute to construct it, because it also could be built under such proceedings. The power granted by the Legislature to build the street also granted to the council the power to do the things necessary to accomplish that purpose, even though the council might do some of the things thus done under other laws and by other methods. 34 O. S., 101; 42 O. S., 585.

By the testimony of Mr. Craig, the engineer who prepared the plans and specifications by order of the council and who was the engineer in charge of the improvement, this 15-inch tile as laid and at the depth laid in said street, did effectually accomplish the purpose of draining the street and roadway, and cost no more, as he says, perhaps less than if the said street and roadway had been drained by other methods of drainage resorted to for such purposes. Now if this be true, and there is no evidence to the contrary, the putting down the 15-inch tile as it was laid in said street was good business method, and not an extravagance and abuse of discretion on the part of the council, and hence it must be treated as not a distinct and separate improvement, but as a part and a necessary part of the improvement at bar under the petition presented to the council praying for the improvement; and in this view the question of constructing a substantive and separate improvement in the nature of a sewer, and that the resolution and ordinance each contain two separate and distinct subjects, and provide for two separate and distinct improvements, are eliminated from this controversy.

The petition attacks the bid, the contract and its legality, and the legality of the advertisement requesting that bids of contractors be submitted.

It is claimed that the advertisement for bids notified contractors that the plans and specifications were on file in the office of the city engineer and might there be seen and inspected. It is claimed and conceded that there was not an officer of said village created by law known as the village engineer, and that hence a direction to contractors that the plans were on file at

the office of the village engineer was not a notification which would inform builders of the whereabouts of said plans, etc., or when or at what place they could be found and examined by contractors who desired to submit proposals to make the improvement.

A grant of power to do a specific thing carries with it the power to do all things necessary to carry into execution the power granted. It was necessary that the council select and appoint a qualified and skilled person to make plans and specifications of this proposed improvement and to act as engineer in charge of the work of construction; this—that the thing which the council was empowered to do might be properly done; and this is applicable as well to other improvements and other work carried on by that body touching said village and the improvements therein. That this was done and properly is evidenced without denial. Mr. Craig had been acting as engineer under appointment by the council for many years; he was well known and had been since 1893 as the person selected by the council to perform the duties of engineer, where work of that sort was to be done. This employment had, it seems, been almost continuous. His office was in the office of the county surveyor, which was always open during business hours. All of these facts were a matter of common knowledge in Wapakoneta and vicinity to a degree that Mr. Craig was known as the city engineer. We are of opinion that under these circumstances the advertisement for bids directing the contractors desiring to see the plans of this improvement to the office of the city engineer was in no wise misleading, but put such in possession of true and full information in that behalf.

It is urged as fatal to the advertisement for bids and all proceedings thereafter that the publication of the notice for sealed proposals was first made on the 4th of July, 1901; that this publication of the ordinance providing for the improvement was made on the 4th of July, 1901, and that the ordinance not going into effect until ten days after said 4th of July, the date of its publication, the advertisement for bids was not published for the requisite time after the ordinance became effective.

We are not of the opinion that this is a vice in the proceedings, or that which followed in consequence of it that will bear injunction of these assessments.    There is nothing to indicate substantially that any property was prejudiced by it, or that any bidder was prevented from making and submitting his proposal, or that the notice failed to reach any who intended to bid or that the work might have sold for a less price, or that competition was prevented.    It is not a jurisdictional matter, or an act in its nature legislative which the clerk was directed to perform.    While all this would not cure such defect, and failure upon the part of the clerk to advertise for bids strictly in compliance with the terms of the statute, which is deemed to be for the protection of the tax-payer and is regarded as peremptory, yet coupled with the fact that the plaintiffs had full notice of the filing of the petition and of the action of the council upon the petition, and that the improvement was about to be made, and that the cost was to be assessed upon abutting property, and were interested and cognizant of each step taken, and had as good reason before work had commenced under the contract and before the contract was let and before expenses had been incurred, as they have since to know, and, for anything to the contrary appearing in evidence, did then know of this defect in the advertisement for bids, as well as they now know it.    And further, coupled with the fact that in the face of all, they stood by and allowed the improvement to be made and the money to be expended without objection taken by legal steps.

All these facts, it would seem, present themselves for consideration in an action to enjoin the assessment, when it comes to the application of the sections of the statute which are curative in their nature and are to guard the rights of all parties and prevent violations which might otherwise arise from mistake, ignorance, negligence or irregularities, or improvidence of municipal officers and be attributable to their conduct.

The result in such case is that, while the assessment may not be and is not conclusive as to amount and is only enforceable to the extent of expense incurred, yet as to the apportioning between properties to be assessed of this amount and making it chargeable upon abutting property, the ordinance under which

the improvement is made, is regarded as conclusive, the ordinance having been passed and the method of assessment having been determined upon before the bidding and before the contract was made.

It is not claimed that the expense of this improvement was not incurred. There is no criticism of the quality of the improvement or the fairness of the price of the work and material. The objection is that the improvement was made and charged up to this street improvement which the council had no right or power to make under that proceeding, and charge and assess as a part of that street improvement.

So that as we view the case this failure upon the part of the clerk to advertise for bids for the period of four weeks after the ordinance went into force in this action, does not affect the event, and action to restrain the collection of an assessment invoking the principles of equity, the merits of the case presented by the complaining parties must show that he is entitled to substantial relief such in character as is offered by courts of equity.

The evidence clearly shows that, under circumstances, not least of which is that plaintiffs stood by and saw the improvement made and money expended without complaint and without taking legal steps to prevent it. And this, together with the fact that the expense is such as should be assessed against the abutting property, leaves the plaintiffs without that which would move a court of equity in their behalf. It might be different if this action was to restrain the collection of something in the nature of a penalty.

It does not appear from the evidence that the amount charged to each lot, though completed and apportioned by the foot front, exceeds substantially in any instance the benefits conferred upon the property by the improvement. This being the case, the method of assessment (even if this assessment itself were without the criticism which follows the failure of the clerk to properly advertise for bids) would not invalidate the assessment in the amount which does not exceed the benefit. So that we can not see where the objection, that the assessment is inimical to the Constitution of this state and the Constitution of the United States, would have application here.

The objection as to failure of notice to property owners is not made good in any respect. The evidence shows that full and complete and legal notice was given in each instance when notice was required.

Without prolonging this opinion by going into detail and without amplification in this regard, we find in neither of the five reasons set forth in the petition for reducing the amount chargeable to each lot, cause for relief in that behalf. And, altogether, in our opinion, no case is made to grant the injunction prayed in the petition.

It does not appear, however, that the improvement as to some of the plaintiffs' property abutting on the street is properly completed. Notably as to the property of plaintiffs Benjamin Burden, Grant Taylor and Jacob Culp, and perhaps others to a less extent. Surely without denial as to the lots of the plaintiffs I have named, the improvement ends at the east line of the Burden lot, and is so left at the end that the water from the intersecting street can not reach the paved street and so pass off, but is dammed up there by the insufficient grade or approach to the pavement, making an unsightly and unhealthy mudhole. Grant Taylor's lot drains to a street running along the side of his lot, and intersecting the improved street. The water draining from his lot reaches the side street, and because of the height of the surface of the improved street the water can not flow off to the side street, and so is left to stagnate, and, from the evidence, the same is true of the lot of Jacob Culp, and perhaps of others.

This condition was not intended to result from the improvement, and must be remedied, not only as to the plaintiffs whom I have specifically named, but as to the others, and wherever it exists, if it exists elsewhere. The parties are entitled to have the street so constructed and the intersecting streets so fixed and graded as to overcome the trouble of which they complain. And it seems this may be accomplished without difficulty, and must be so done without further expense to them, as well as those I have named as those I have not named, if conditions demand it. As to Burden, Taylor and Culp, the collection of the amount with which their lots stand charged will be restrained until a showing is made to this court that the defect of which I speak

is made right. And as to them the case is continued until the next term of this court in order that opportunity may be given the defendant to show that it has complied with this condition. The injunction is refused as to the other plaintiffs, with the admonition, however, to defendant that this court will hold defendant to the obligation to remedy any condition of the character described which may exist as to each and any of said other plaintiffs.

The costs, because of the defect in the advertisement for bids, and the reason which said defect afforded for a possible remedy, are adjudged against the defendant, and the petition as to the plaintiffs other than Burden, Taylor and Culp is dismissed and the injunction dissolved.

Judgment for costs against defendant. Execution is awarded and the case is remanded for execution.

*W. E. Detweiler* and *F. M. Horn*, for plaintiffs.

*Roy E. Layton*, for defendants.